CUTLER-HAMMER MFG. CO. v. AUTOMATIC SWITCH CO. OF BALTIMORE CITY et al.

(Circuit Court, S. D. New York. July 25, 1906.)

No. 8,099.

PATENTS—INFRINGEMENT—ELECTRIC SWITCH.

The Blades patent, No. 453,032, for an automatic switch mechanism for an electric motor, construed, and *held* not infringed.

In Equity.

W. Clyde Jones and Robert Lewis Ames, for complainant.

Philip Mauro, C. A. L. Massie, and Reeve Lewis, for defendants.

PLATT, District Judge. This is a patent suit based upon letters patent No. 453,032, dated May 26, 1891, to Harry H. Blades, and assigned to complainant February 15, 1902. The claims at issue in suit are 1, 2, and 5:

"(1) An automatic switch mechanism for an electric motor, the same consisting of a switch governing the admission of current to the motor, an electro-magnet on an independent shunt-circuit, an automatic switch-lever on the armature-circuit, a series of resistances with their terminals arranged to successively engage the said switch-lever, and a dash-pot to retard the motion of the lever, said lever actuated by the armature of the said electro-magnet, substantially as and for the purposes described.

"(2) An automatic switch mechanism for an electric motor, the same consisting of a switch for admitting current to the motor, an electro-magnet on an independent shunt-circuit, an automatic switch-lever in the armature-circuit, a series of resistance terminals in contact with which said automatic switch is adapted to traverse, an armature to said electro-magnet adapted to operate said automatic switch, a dash-pot adapted to retard the motion of the automatic switch, and a spring or springs for restoring the automatic switch to its initial position when the current is cut off from the machine, substantially as described."

"(5) The combination with a shunt-wound electric motor on a constant-potential circuit, of a magnet on an independent shunt-circuit between the terminals of the motor, a switch adapted to open and close the armature-circuit, said switch arranged to be held in its closed position by the magnetism of the said magnet, and means for automatically retracting the said switch to its initial position when the magnet is de-energized by the cessation of the current, substantially as described."

The defenses are that the claims are invalid if construed broadly enough to cover defendants' construction; but that, if limited to features of possible novelty, there is no infringement.

We are to concern ourselves herein with starting-boxes for shunt-motors, and we are especially directed to self-starters, rather than to hand-starters. The former differ from the latter in that a pulling electro-magnet is provided, which, when energized, automatically moves the contact arm across the series of resistance terminals, thus permitting the electric current to start the motor. When it is de-energized, the contact arm is carried back to its initial position.

The complainant's main contention is that the self-starter art is distinct from other branches of the electric art, and that in developing the same it was a serious problem to so locate the magnet and to so arrange the self-starter and electric motor elements as to properly, economically, and expeditiously perform the purposes for which the self-starter is provided. Complainant insists that Blades solved the problem by placing the magnet in an independent shunt-circuit, so that from the main line comes the energy which separately cares for the field, the armature, and the self-starter, called ordinarily the "three-branch system"; that these are all united in such a way that, while each contributes its rightful part to the common result, the self-starter is independent of the electric motor system, and neither part injuriously affects the proper operation of the other—that is to say, that they are mutually dependent, but reciprocally noninterfering, each doing its own work, and not interfering with the other. Such a self-starter, it is vigorously asserted, was new with Blades. It is said to be a radically new result, never before produced in the art, and that

its great virtue is due to the glorious burst of inspiration which swept over Blades, pushing forth an idea which has made the self-starter a tremendous commercial success.

Defendants, on the contrary, with equal vigor insist that it was not an inventive act to place the self-starting magnet on an independent shunt-circuit; that to do so was only a matter of selection, and, admitting that to do so would require invention, there is no evidence that Blades had any notion that he was indulging in such an act of invention when he signed and swore to his claims and delivered them to his attorneys to be filed in the Patent Office.

The dog days are on, and I hope to be excused for touching nothing except the points which to my mind seem exceptionally essential.

George Whittingham had a patent for an automatic electric switch, No. 415,487, dated November 19, 1889. Figure 3 of that patent is said to furnish the foundation for his second patent, No. 499,769, dated June 20, 1893, which latter has been found by Judge Townsend in Auto. Sw. Co. v. Cut. Ham. Co. (C. C.) 139 Fed. 870, to be the invention which really made self-starters a commercial possibility. Reference may be had to the description of the constructions in that case, since they are the same as those now in suit. It has been found that up to the date of this last patent the art had languished, and it will be noticed that the patent in suit was issued a trifle more than two years prior thereto. Now, Whittingham's earlier patent was issued over a year before the patent in suit, so that Blades had ample time to digest it thoroughly. In that patent Whittingham shows in figure 1 the magnet intended to move the resistance-bar as placed in the "main line current which passes to both armature and field." In figure 2 he puts it in the field branch. In figure 3 he shows it "operated by independent circuit." The experts differ about what he meant by the quoted words, but from any view point he showed how the magnet could be operated independently of the field and armature circuits. Later in his specifications, at lines 39 et seq., he again calls attention to figures 1 and 2, and says that they are "identical  *  *  * except that the wiring is different." Figure 3, he says, is also identical with figure 1, but that the "wiring is different." And yet figure 1 shows the magnet in the main line, figure 2 in the field, and figure 3 in an independent circuit. All this strongly supports defendants' contention that it is merely a matter of judicious selection to decide in which of the various locations awaiting it one shall place his magnet. An examination of the file wrapper of the patent in suit removes any doubt which may have lingered for a moment in the mind.

A careful study of the specifications discloses some interesting things which seem to have obsessed the patentee at the outset. He was thinking about switch mechanism, and he presented figure 1 as a plan view embodying the invention. Figure 2 showed how the switch operated. He intended to show how an automatic switch could operate, and at the same time "properly" guard the gradual introduction of current into the armature "circuit or circuits." He expected it to be gradual, no matter how quickly the operator moved the hand lever. The current would go freely through the coils, etc. The claims 1 and 2, which he based upon his disclosure, placed the magnet on "the

main circuit through which current is shunted"; and claim 3 did not place it anywhere. All this he signed in due and regular form. I am not surprised that so intelligent a man as Mr. Greeley should have told him that his location of the magnet was presented "obscurely," and have called his attention to the fact that he was dealing with electricity.

Counsel for complainant make much of the proper guarding and free passing of current which is alluded to in the specifications, but they must remember that those thoughts were expressed and figure 2 was drawn at a time when the patentee was locating his magnet on the main line. If there is anything to this glorious invention, this bursting of an inventive spark into flame, this putting of the self-starter magnet into the independent shunt, the credit for the same should go to Mr. Greeley.

Ponder for a moment on Blades' actions. He was told to take his magnet to the independent shunt to avoid Whittingham's patent then existing. He grudgingly accepted what evidently struck him then as a limitation, but his attitude toward the examiner was somewhat like that of the proverbial recipient from the Greeks, and through his attorneys he reserved the right to make a separate application with the magnet in the field.

The last straw comes when we look at claim 5 in suit. Nothing like it appeared in the papers originally filed, but after the examiner had helped him in selecting the place for his magnet, and reminded him that he was dealing with electricity, and he had hesitatingly acquiesced, he began to think about that hand-starter patent No. 418,678, which has since become, through the sanction of the courts, a pioneer. There the switch was held in its closed position by a magnet on the field circuit, which, by the way, appears to have been one powerful reason for giving it the coveted pioneership. It might be a good scheme to have that magnet on an independent shunt, and so he prepared and obtained claim 5 now in suit, which obviously must be read on a hand-starter. The patent in suit then came out. The complainants were licensed under it. Then came Whittingham's second patent based upon his first. The present defendants sued the present complainant on the later Whittingham patent. The defendants therein, using this Blades patent, turn about and sue the complainants therein, and yet the Blades patent antedates the later Whittingham patent. Now that Whittingham has told us about the trials and tribulations which beset the explorer in the self-starter art, the experts can point out many advantages and the absence of many disadvantages in the broad invention which they claim for Blades upon the patent in suit. There was no point in using an independent shunt for the purpose now credited to Blades until the high resistance lamp of Whittingham was brought into the combination. Of course, if that were located on the field-shunt, or the armature-shunt, it would while in use take away power from one or the other part of the motor, and so the separate shunt became a necessity. It may have been invention to so use it, and it may not have been; but certainly every one had long known that, if you did not wish to interfere with the field and armature, all you had to do was to run another rung of the ladder, as it were, across the

mains. If he had seen all these things, or if he had obtained a glimmer of the light which has come, it is not difficult to imagine how he would have extolled his discovery; but, alas, from alpha to omega he is as silent as the tomb.

To place the suggested invention in Mr. Blades' mind when he disclosed what he did think to the world in return for a 17 years' monopoly thereof, we must credit not only himself, but his attorneys, with less than the expected skill. In fine, the present counsel base their argument largely upon the blundering incapacity of those attorneys, but even that does not account for Blades' monumental denseness. After the second Whittingham patent, we can see what the trouble was, but until then no mind could have been acute enough to find in Blades's attempt at switch mechanism the great things which can now be so cleverly labeled upon it.

The commercial structures of the contending parties are so much alike that at the end of things somebody will be found to have been right and somebody wrong, and to the victor will belong the spoils. I have contributed my mite to the struggle, and in closing I would like to say to the contending parties that I must beg them not to imagine that I have taken up this matter in any light or careless vein. It is a very important cause. I have given it, both at and about the hearing and since, the best that is in me of conscientious study, and have decided it without fear or favor, as I think that it ought to be decided. Whatever the Blades invention in suit may be, it certainly is not one which the defendants infringe.

Let the bill be dismissed.